**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>LORENZO CATALAN ROMAN,<br><br>    Defendant. | CR. NO. 02-117 (PG) |

**OPINION AND ORDER**

This Court recently issued an oral order denying defendant Lorenzo Catalan-Roman's sealed motion for admission of exculpatory polygraph results during his capital penalty phase. (Docket No. 459)  Defendant wished to offer test results which allegedly cleared him from an attempted robbery mentioned only during the guilt phase.  As the sole basis for admission, defendant argued that his 8th amendment right to present mitigating information during his capital penalty phase requires that the sentencer hear the polygrapher's conclusions. (Docket No. 451)  The reasons for denying the motion are elucidated below.

**I. Background**

Defendant Lorenzo Catalan-Roman was charged on March 14, 2003 by way of a second superseding indictment with crimes including conspiracy, armed robbery, and the willful murder of a security guard during the commission of an armed robbery. (Docket No. 85)  The government duly noticed its intent to pursue the death penalty on July 31, 2003. (Docket No. 149)

At trial, evidence was adduced regarding defendant's participation in an attempted robbery on March 6, 2002, which the government alleged as an overt act in furtherance of the conspiracy.  Defendant Catalan-Roman claimed that he was falsely implicated, and filed a mid-trial sealed

Cr. No. 02-117 (PG)                                                    Page 2

motion to exclude evidence of this attempted robbery. The motion was denied on account of defendant's failure to provide a basis for the exclusion.[1]

Following a three-week trial, on March 22, 2005, the jury found defendant guilty of all charges. (Docket Nos. 389 and 391) In preparation for the penalty phase, defendant sought and was granted permission to conduct polygraph testing. He then moved to present the polygraph results, in support of his claim of non-participation in the attempted robbery. (Docket No. 451) Defendant argued that both the relevant case law and his 8th amendment right to present mitigating information favor admitting the polygraph results. Id.

## II. Discussion

The heightened reliability mandated by the Eight Amendment in capital sentencing proceedings is accomplished by admitting sufficient information about the defendant and the offense such that the sentencer may render an individualized sentencing determination. See Woodson v. North Carolina, 428 U.S. 280, 304 (1976). To this end, the Eighth Amendment guarantees a capital defendant's right to present relevant mitigating information to the sentencer. See e.g. Lockett v. Ohio, 438 U.S. 586, 608 (1978).

This right, however, is not without its limits. Although capital sentencing proceedings are released from the strictures of the Federal Rules of Evidence, see 18 U.S.C. § 3593(c), the trial judge retains his traditional role as gatekeeper of constitutionally permissible information, and must accordingly exclude any unreliable or prejudicial

---

[1] His alternative motion for severance in order to present his co-defendant's exculpatory testimony was also denied, on the grounds that aside from the weighty interests of judicial economy, the untimeliness of the motion, and the fact that the testimony would be subject to damaging impeachment, defendant did not meet the standard set forth in United States v. Drougas, 748 F.2d 8, 19 (1st Cir. 1984). (Docket No. 354)

Cr. No. 02-117 (PG)                                                    Page 3

information that might render a trial fundamentally unfair.  See U.S. v. Fell, 360 F.3d 135, 145 (2d Cir. 2004)(collecting cases).  In addition, the Federal Death Penalty Act ("FDPA") circumscribes the right to present mitigating information by excluding any relevant information the probative value of which is "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. § 3593(c). These safeguards promote the imposition of an individualized sentence as required by constitutional parameters, while precluding the penalty phase of a capital trial from devolving into an evidentiary free-for-all.  See e.g. Fell, 360 F.3d at 146 (collecting cases).

    Defendant submits that these laxer standards militate in favor of admitting his polygraph results.  This Court disagrees.  Polygraphs remain nearly universally frowned upon as courtroom lie detectors.  Per the Supreme Court's observation, the foundation of our legal system is that the jury is the lie detector.  See United States v. Scheffer, 523 U.S. 303, 308 (1998) (affirming constitutionality of a categorical ban on polygraph evidence at court-martial proceedings).  This consideration informed the Supreme Court's recent rejection of the argument that the Sixth Amendment compels the admission of exculpatory polygraph results for their truth.[2]  In so holding, the Scheffer Court noted that federal and state courts continue to express doubt as to the reliability of polygraph evidence and declared that "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because

---

[2] The Court does not address the admissibility of polygraph results for other evidentiary purposes.  While the First Circuit generally does not admit polygraph evidence for its truth, see U.S. v. Trenkler, 61 F.3d 45, 58 (1st Cir. 1995)(also citing Fed.R.Evid. 801, 802) (internal citation omitted), it would allow admission for other purposes.  Cf. Moreno-Morales v. U.S., 334 F.3d 140 (1st Cir. 2003)(finding *Brady* violation where prosecutors failed to disclose thirteen polygraph examinations which could have been used for impeachment purposes); U.S. v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988)(implying admissibility to show good faith); and U.S. v. York, 357 F.3d 14, 21-22 (1st Cir. 2004) (noting inherent unreliability of polygraph but sustaining examinations even on doubtful evidence of success at deterring recidivism).

Cr. No. 02-117 (PG)                                                      Page 4

certain doubts and uncertainties plague even the best polygraph exams." Id. at 312. While this Court is mindful that Scheffer involved a challenge to a military rule of evidence, the Court finds the reasoning in Scheffer no less germane or compelling.

The Scheffer Court emphasized that "[a] defendant's right to present relevant evidence is not unlimited, but is subject to reasonable restrictions," see id., indicating that courts "may be legitimately concerned that juries might be misled, and give excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise...." Id. at 313-14.[3] The Court also pointed out that even though defendant had not been permitted to bring the polygraph results, he was not precluded from offering other evidence to prove the same fact. Id. at 317 n.13.

Scheffer surveyed the scientific literature on the reliability of the polygraph, citing one study which found polygraph assessments of truthfulness to be "little better than could be obtained by the toss of a coin." Id. at 310 (citing Iacono & Lykken, The Scientific Status of Research on Polygraph Techniques: The Case Against Polygraph Tests, in 1 D. Faigman, D. Kaye, M. Saks, & J. Sanders, Modern Scientific Evidence 565, §14-5.3 at 629 (1997). Although the Supreme Court noted that most jurisdictions banned polygraph evidence altogether, it also cited some Courts of Appeals which left exclusion to the discretion of district courts under Daubert. Id. at 311 (citing U.S. v. Posado, 57 F.3d 428, 434

---

[3] As the Supreme Court noted, the general exclusion of polygraph evidence serves several legitimate interests in the criminal trial process. See Scheffer, 523 U.S. at 309 n.5. These interests include the inherent danger that jurors might be misled by polygraph evidence, the risk that jurors may cede their traditional duty to determine guilt to the polygrapher, the likelihood that the defendant's trial will degenerate into a trial of the polygrapher, and the fact that the reliability of the polygraph machine has not been sufficiently established. Id.

Cr. No. 02-117 (PG)                                                    Page 5

(5th Cir. 1995) and U.S. v. Cordoba, 104 F.3d 225, 228 (9th Cir. 1997)).[4] The Supreme Court likewise hinted that the whole theory of polygraph examinations might be irredeemably flawed. Scheffer, 523 U.S. at 310 (citing studies challenging the scientific basis for polygraph tests); see also U.S. v. York, 357 F.3d 14, 23 (1st Cir. 2004) (citing studies in Scheffer pointing to the flawed hypotheses underlying polygraphy but refusing to determine its reliability).

With its focus on the dubious value of polygraph evidence, Scheffer thus suggests that exclusion would also pass constitutional muster in the special context of capital sentencing proceedings. See id. at 314. Indeed, there is precedent supporting the exclusion of polygraph results during a capital penalty phase based solely on an analogy to Scheffer. See Goins v. Angelone, 52 F.Supp.2d 638, 675 (E.D.Va., 1999). Defendant nevertheless argues that the unique context of a capital penalty phase mandates a different result. (Docket No. 451 at 3).

His argument is not premised on improvements in polygraph reliability.[5] In fact, defendant overlooks Scheffer and the well-documented unreliability of the polygraph, instead basing his argument solely on his 8th amendment right to have his sentencer consider mitigating information. This argument misconstrues the weighty precedent placing reasonable limits on the introduction of mitigating information. See U.S. v. Fell, 360 F.3d 135, 145 (2d Cir. 2004) (finding that trial judge retains his role as gatekeeper of constitutionally permissible information under FDPA regime, and stressing trial judge's duty to exclude unreliable information) (collecting cases). Given that the jury is still

---

[4] But cf. U.S. v. Gilliard, 133 F.3d 809 (11th Cir. 1998)(exclusion of polygraph evidence under Daubert not abuse of discretion); and deVries v. St. Paul Fire and Marine Ins. Co., 716 F.2d 939, 944-45 (1st Cir. 1983) (refusing to address whether polygraph evidence should be excluded per se in federal court).

[5] Defendant also failed to show that his polygraph test was properly administered, although this omission is irrelevant to the Court's holdings.

Cr. No. 02-117 (PG)                                                  Page 6

out on the reliability of polygraphs at ascertaining truth, pursuant to its gatekeeping authority, this Court excludes such polygraph results where offered for their truth.

Defendant's reliance on Paxton v. Ward, 199 F.3d 1197, 1211-1216 (10th Cir. 1999), is unavailing. (Docket No. 451 at 3-4) While Paxton indeed distinguishes Scheffer on the ground that it did not concern a capital defendant's constitutional penalty phase rights, id. at 1215, the Paxton decision was rendered on a disparate factual canvas. There, although the state put Paxton's criminal history in issue, a state evidentiary rule excluded all mention of the word "polygraph," and Paxton was not allowed to explain that certain old charges were dismissed because he had been cleared by a polygrapher. Id. at 1215-16. Moreover, despite knowing that Paxton was precluded from mentioning the exculpatory polygraph results, the prosecutor stressed in closing argument Paxton's failure to rebut the state's inventory of his criminal history. Id. On habeas review, the Tenth Circuit held that admission of the polygraph results was constitutionally required as integral to the Paxton's defense, in accordance with Scheffer. Id. at 1220.

The Paxton case thus presents the rare scenario where polygraph results, regardless of their accuracy, are necessary to a defendant's mitigation theory. Although this Court is not bound by Paxton, the result achieved here is not inconsistent with the Tenth Circuit's reasoning in that decision. Exclusion here would not undermine defendant's case because, unlike Paxton, defendant's criminal history was never put in issue by the prosecution.[6] More importantly, as in Scheffer, defendant's

---

[6] The only other case cited by defendant, Rupe v. Wood, allowed polygraph evidence to impeach the prosecution's improper argument that there was not "one shred of evidence" regarding the involvement of another in the capital crime. 93 F.3d 1434 (9th Cir. 1996) (state trial court's refusal to admit polygraph results of key state witness violated defendant's due process rights). Although Rupe predates Scheffer, it also falls into the category of cases where exclusion severely undermined defendant's ability to present mitigating information.

polygraph score is not the only information which could mitigate his participation in the attempt.[7]

Even assuming that the unreliability of the polygraph did not completely moot its probative value, the results are still excludable pursuant to the test set forth in FDPA § 3593(c). The results fail to fulfill the FDPA precondition of relevance, inasmuch as they are not even tangential to defendant's sentence, to any aggravating factor, to any of the myriad mitigating factors proposed by defendant, nor in rebuttal to anything mentioned during the penalty phase. Perhaps the polygraph results would have had impeachment value during the guilt phase; however, having entered the penalty phase, where there has been no mention of the alleged attempt, the results are irrelevant. The penalty phase is not the defendant's opportunity to put the government on trial for its prosecution of the case.

Finally, even if polygraph testing were sufficiently reliable, and assuming that defendant's results were somehow relevant, they still fail the FDPA balancing test. The FDPA provides that relevant information may be excluded if its probative value does not outweigh the danger of misleading the jury. 18 U.S.C. § 3593(c). Here, whatever probative value the results may have is substantially outweighed by their potential to mislead the jury. The only conceivable relevance of the results is to the general proposition that defendant committed fewer crimes than the sentencer was led to believe during the guilt phase.[8] However, the Court

---

[7] It is also of import that the attempted robbery was only alleged as an overt act in furtherance of the charged conspiracy; it is not the capital crime in mitigation of which defendant sought to introduce the polygraph results. And regardless, defendant need not have taken part in the attempted robbery in order to form part of the conspiracy.

[8] Defendant never disclosed which mitigating factor the results supported, and again, the government has not placed his criminal history in issue. Moreover, the Court struck the non-statutory aggravator of future dangerousness and the government stipulated to a mitigating factor of "no past criminal history."

Cr. No. 02-117 (PG)                                                    Page 8

is privy to co-defendant Quester Sterling's confession, which implicates defendant in other uncharged crimes. To admit information regarding defendant's non-participation in a robbery, where it is likely that he has been involved in others, unfairly misleads the jury, outweighing any probative value. The polygraph results are therefore excluded pursuant to § 3593(c).

### III. Conclusion

Even the more inclusive evidentiary standards constitutionally required in capital sentencing proceedings do not mandate the admission of proof in mitigation at defendant's whim. The responsibility for patrolling the borderline of admissible information during a capital sentencing phase continues to rest with the trial judge. Polygraph results are inherently unreliable and this alone warrants their exclusion. Moreover, even if polygraph results had a less alarming margin of error, here, not only are they practically irrelevant, whatever probative value they may have is substantially outweighed by the danger of misleading the jury. Defendant's exculpatory polygraph results must therefore be excluded.

**SO ORDERED.**

In San Juan, Puerto Rico, April 27, 2005.

                                           S/JUAN M. PÉREZ-GIMÉNEZ
                                           JUAN M. PÉREZ-GIMÉNEZ
                                           UNITED STATES DISTRICT JUDGE