**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

     Plaintiff,

       v.                        CR. NO. 02-117 (PG)

LORENZO CATALAN ROMAN, and
HERNALDO MEDINA-VILLEGAS,

     Defendants.

---

**OPINION FOLLOWING ORDER**

    By sunup on the day their capital sentencing phase was to begin, defendants filed a joint motion to strike or limit the majority of the aggravating factors.  Their chief argument focused on the insufficiency of the guilt-phase evidence, although they also submitted a panoply of other claims.  (Docket No. 417)

    Instead of proceeding with opening statements as scheduled, the Court held a hearing on defendants' motion.  Following a careful review of the applicable law and the record of the case, the Court determined that defendants' irregular timing notwithstanding, constitutional demands militated in favor of disposition.  An oral order was accordingly issued, GRANTING IN PART and DENYING IN PART defendants' motion.  The Court now follows with this Opinion.

    The Court cautions at the outset, however, that the fact of its ruling should not be interpreted as a blanket endorsement of defense counsels' timing.  The resulting delay and concomitant waste of judicial resources seem intensified in light of the fact that defendants were afforded learned counsel, who should have been able to proceed with all the greater celerity.  Were it not for the awesome constitutional protections accorded capital defendants, a summary denial of most of the motion would have been appropriate.

## I. Background

Defendants Lorenzo Catalan Roman ("Catalan") and Hernaldo Medina Villegas ("Medina") were charged on March 14, 2003 by way of a second superseding indictment with crimes including conspiracy, carjacking, armed robbery, and the willful murder of a security guard during the commission of an armed robbery.  (Docket No. 85, Second Superseding Indictment)  The government duly noticed its intent to pursue the death penalty on July 31, 2003.  (Docket No. 149)  The Notice alleged the following statutory aggravating factors: the grave risk of harm to additional persons, 18 U.S.C. § 3592(c)(5); the heinous, cruel or depraved manner of committing the offense, 18 U.S.C. § 3592(c)(6); the underlying motive of pecuniary gain, 18 U.S.C. § 3592(c)(8); the fact of substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); the vulnerability of the victim, 18 U.S.C. § 3592(c)(11); and multiple killings or attempted killings, 18 U.S.C. § 3592(c)(16).  Id.  The government also submitted as non-statutory aggravators the impact of the victim's death, defendants' future dangerousness and their lack of remorse.  Id.

Jury selection was completed by February 24, 2005 (Docket No. 340) and trial began on March 7, 2005.  (Docket No. 360)  The prosecution presented evidence of an ongoing conspiracy to rob Ranger American Armored Services, an interstate armored truck company whose messengers daily transport hundreds of thousands of dollars.  The jury heard evidence on the modus operandi of several armed robberies.  A great deal of evidence was adduced regarding the armed robbery of March 27, 2002, where defendants killed Mr. Gilberto Rodriguez-Cabrera, a Ranger American messenger, while he delivered $100,000 dollars to a small credit union.

The victim's delivery partner, Mr. Eluber Torres-Alendro, witnessed the attack from the armored truck.  Eluber testified that Medina fired

the first shot at the victim, injuring the victim's upper forearm as he held his arms above his head.  Another shot reportedly rang out after Medina obtained possession of the money bag.  Eluber stated that the victim begged "no, no, please no" before Medina fired.  As the victim fell backward, Eluber opened the truck door and began to shoot at the defendants, attempting to save his partner's life.

A shootout ensued, with one bystander burrowing himself into an automated teller machine and another ducking inside an adjacent building.  Eluber himself was injured by a third co-defendant who was serving as a lookout.  A total of thirty-odd casings were subsequently recovered from the scene.  While Medina absconded unharmed, Catalan, though himself seriously injured, proceeded to fire all of his remaining shots at the victim.  At the time Catalan began shooting, the victim lay agonizing on the pavement, already fatally wounded by Medina.  The jury could perceive from the evidence that the victim attempted to shield himself from the cannonade by turning away his shoulders.  When his ammunition ran out, Catalan spiked his weapon on the pavement.  Less than sixty seconds elapsed between defendants' initial approach and the firing of the last shot.  The victim died approximately an hour later.

According to the forensic pathologist, the victim suffered eight bullet wounds.  One of these was a non-mortal wound to his upper forearm, which is consistent with a shot firing as he held his arms above his head, in surrender.  The victim also suffered three fatal wounds.  Two bullets were extracted from the fatal wounds, which were traced by a ballistics expert to the weapons used by defendants.  The fatal wound to the victim's chest was inflicted by a bullet fired from Medina's weapon. The other fatal bullet was fired from Catalan's weapon, entering through the victim's lower back, and finally lodging itself in his shoulder.  The bullet's path corroborates the eyewitness testimony that the victim attempted to evade Catalan's shelling by rolling away his shoulders.

The jury also heard evidence that the police procured emergency

help for both the victim and Catalan when they arrived on the scene. The police were unable to apprehend Medina, who fled, proceeding with the profits to a shopping spree for new furniture, jewelry and other commodities. Additional evidence was presented concerning Medina's behavior in prison, where he boasted of his talents as a sniper and introduced himself as "Ranger."

On March 22, 2005, following a three-week trial, the jury found both defendants guilty on all counts. The Court had previously agreed to an interregnum between the guilt phase and sentencing, and had accordingly set the penalty phase for April 11, 2005. In the early morning hours of April 11, however, defendants filed a joint motion entitled "Capital Defendants' Joint Filing Regarding Aggravating Factors" (Docket No. 417), along with several other motions, provoking a delay in the penalty phase. Instead of proceeding with opening statements as scheduled, the Court held oral arguments regarding the applicability of most of the aggravators.

Defendants' arguments spanned the gamut of possibilities, ranging from inadequate notice to the sufficiency of the evidence presented during the guilt phase. They submitted that the aggravator of pecuniary gain is inapplicable because the evidence failed to show that any such gain directly resulted from the victim's death. Another argument pertained to the lack of evidence on substantial planning and premeditation. Defendants further claimed that the "vulnerable victim" aggravator should not apply because it improperly doubled the "heinous, cruel and depraved" aggravator, and because the victim only became vulnerable during the commission of the offense. The application of the "heinous, cruel and depraved" aggravator was also attacked on the grounds that the government cited the statute improperly. In addition, defendants controverted the non-statutory aggravator of lack of remorse, claiming that the government had not advanced any information supporting it. Finally, defendants advanced two miscellaneous arguments, asserting

that the grand jury indicted on a different set of facts and speculating that it is likely that the grand jury did not receive adequate instructions regarding the "pecuniary gain" aggravator.[1]

The Court considered the government's response, which chiefly addressed the insufficiency arguments. (Docket No. 424)  An oral order was issued prior to the beginning of the penalty phase,[2] excluding the aggravating factors of substantial planning and premeditation, limiting the vulnerable victim aggravator to Catalan, and limiting the lack of remorse aggravator to Medina, due to the insufficiency of the guilt-phase evidence.  The jury's preliminary instructions were fashioned accordingly, bearing no reference to the excluded factor, and properly limiting the application of the others.

## II. Discussion

A. Overview of the Federal Death Penalty Act

Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, et seq., the discretion to seek the death penalty is vested with the government.  18 U.S.C. § 3593(a); see also Jones v. United States, 527 U.S. 373, 376 (1999).  If it resolves to seek the death penalty, the government must serve on the defendant, a reasonable time before trial, a notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as

---

[1] The Court recognizes that defendants liberally interspersed the phrase "unconstitutional as applied" in various section headings throughout their motion. Because the motion cites no constitutional provision under which that argument might be evaluated, and because no attempt was made to develop the argument, however, the phrasing was treated as gratuitous rhetorical flourish.  Although the Court should be "particularly sensitive to ensure that every safeguard is observed" when a defendant's life is at stake, Gregg v. Georgia, 428 U.S. 153, 187 (1976), the Court declines to dream up and articulate defenses.

[2] In a separate Opinion and Order, the Court also limited the aggravator of future dangerousness to the context of life in prison without the possibility of parole, and granted Medina's motion to exclude information regarding uncharged crimes for which notice was inadequate.  See Docket No. 447.  These issues are not retreaded here.

justifying a sentence of death." See 18 U.S.C. § 3593(a). Here, the aggravating factors were set forth in the indictment as special findings (Docket No. 85), as well as in the government's "Notice of Intent to Seek Death." (Docket No. 149)

Following trial, if the defendant is found guilty of the capital crimes charged, a penalty phase ensues where the jury considers proof of the aggravating factors designated in the Notice of Intent. In addition to the sixteen statutory aggravators, see 18 U.S.C. § 3592(c), the government may also seek the death penalty on the basis of non-statutory aggravating factors, which are defined as "any other aggravating factor for which notice has been provided." 18 U.S.C. § 3592(d).

Before a death sentence may be lawfully imposed, assuming threshold findings that the defendant was of age and acted with the requisite intent in committing the capital crime, see 18 U.S.C. § 3591(a), the jury must unanimously find the existence beyond a reasonable doubt of at least one statutory aggravating factor. See 18 U.S.C. § 3592(c). If it so finds, the jury must then unanimously determine whether any non-statutory aggravating factors exist and beyond a reasonable doubt. See 18 U.S.C. § 3593(d), (e). The jury next considers whether any mitigating factor is present according to a preponderance standard. Id. Finally, the jury determines whether all existing aggravating factors sufficiently outweigh all applicable mitigating factors, thereby justifying a sentence of death. 18 U.S.C. § 3593(e).


B. Notice of the Aggravating Factors

Notice of the aggravating factors must be provided to the defendant a reasonable time before the trial. 18 U.S.C. § 3593(a). Accordingly, a court may strike a Notice of Intent if it is unreasonably delayed. United States v. Ferebe, 332 F.3d 722, 737 (4th Cir. 2003) (determining that reasonableness of notice depends on the nature of the charges presented in the indictment, the nature of the aggravating factors, the

period of time remaining before trial, and the status of discovery in the proceedings).

The court may nevertheless permit the government to amend the notice upon a showing of good cause.  18 U.S.C. § 3593(a).  While a showing of good cause presupposes the relevance of any new aggravator, good cause also requires a showing that there was no deliberate delay by the government and that no prejudice to defendant will result.  <u>See</u> <u>United States v. Battle</u>, 173 F.3d 1343, 1348 (11th Cir. 1999) (finding good cause to amend where government sought to add information which did not exist until after the filing of the notice)(citation omitted).

There are also constitutional limits on which aggravating factors may be alleged.  First, an aggravating factor is unconstitutionally vague if it does not possess some "common-sense core of meaning ... that criminal juries should be capable of understanding." <u>See</u> <u>Jones</u>, 527 U.S. at 400 (<u>citing</u> <u>Tuilaepa v. California</u>, 512 U.S. 967, 972-75 (1994)(other citations omitted).  Second, an aggravating factor fails constitutional scrutiny if it does not serve a narrowing function, constricting eligibility for the death penalty only to a subclass of those convicted of the underlying offense.  <u>See</u> <u>id.</u>  Third, an aggravating factor must be "particularly relevant to the sentencing decision," such that it provides a principled basis from which the sentencer may distinguish those who deserve death from those who do not.  Gregg v. Georgia, 428 U.S. 153, 192 (1976).  Both statutory and non-statutory aggravators are subject to the same constitutional limits.  See generally Jones, 527 U.S. at 404; cf. <u>United States v. Sampson</u>, 335 F.Supp.2d 166, 228 (D.Mass. 2004) (the propriety of a non-statutory aggravator or mitigator is a question of law for the court).

<u>C. Information in Support of Aggravating Factors</u>

The Federal Rules of Evidence are not controlling during the sentencing proceedings.  FDPA 3593(c).  Instead, in proving the existence

of a factor, any relevant information may be presented to the jury unless "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). A greater quantum of information is thus admissible under the FDPA than the Federal Rules of Evidence. United States v. Fell, 360 F.3d 135, 143 (2d Cir. 2004). This effect is consonant with the Supreme Court's mandate of "heightened reliability" in the imposition of the death penalty because it permits "the jury [to] have before it all possible relevant information about the individual defendant whose fate it must determine." Id.(quoting Jurek v. Texas, 428 U.S. 262, 276 (1976), and collecting Supreme Court cases trending against restrictive application of evidentiary rules at sentencing hearings).

     Although capital sentencing proceedings are released from the strictures of the Federal Rules of Evidence, see 18 U.S.C. § 3593(c), the trial judge retains his traditional role as gatekeeper of constitutionally permissible information, and must accordingly exclude any unreliable or prejudicial information that might render a trial fundamentally unfair. See Fell, 360 F.3d at 145 (collecting cases); see also United States v. Beckford, 964 F.Supp. 993, 1000 (E.D.Va. 1997)("[I]t is Constitutionally essential to assure that the principle of heightened reliability serves as a meaningful limit to the admission of "all relevant evidence" in order to prevent the less stringent concept of relevance from predominating over the cardinal principle of reliability.").

     Furthermore, FDPA § 3593(c) does not divest the court of its inherent power to evaluate the sufficiency of information presented during the penalty phase, applying the standards set forth in Fed.R.Crim.P. Rule 29. See Sampson, 335 F.Supp.2d at 198 (applying Rule 29 standard to penalty phase proceedings though Rule is inapplicable by its own terms, because the constitutional mandate of heightened reliability directs that a death sentence must not be imposed on lesser

information than a guilt verdict).

In ruling on a motion regarding the insufficiency of the information, as in the Rule 29 context, the court must look at the information in the light most favorable to the government, resolving all credibility questions and evidentiary conflicts in favor of the government. See United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). A court must "reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative...." United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995) (citations omitted), deciding if the information is sufficient to permit a rational jury to find each essential fact to have been proven beyond a reasonable doubt. Id. The irreversibility of capital punishment requires that a sentence of death rest on no less insufficient a foundation than a guilt verdict. Sampson, 335 F.Supp.2d at 201-202.

D. Defendants' Timing

The day the penalty phase was to begin, defendants launched an attack on almost all of the aggravators designated in the Notice of Intent. Although the Court ruled on the motion, defendants' timing was infelicitous, and but for the weighty constitutional protections afforded capital defendants, most of the constitutional arguments would have been waived or moot. Defects in the indictment must be raised prior to trial, see Fed.R.Crim.P. 12(b)(2), and as the government rightly argued, there is no reason why capital defendants should be permitted to rest on their laurels regarding similar defects in the Notice of Intent.

Likewise, attacks on the constitutionality of an aggravator, be it a facial attack or an as-applied attack, should not be indefinitely remitted. It may well be that the evidence presented at trial supplements the Indictment and the Notice to the extent that it cures a purported deficiency, and the arguments of defendants who wait to the last minute should be evaluated accordingly. Although the Court should

be "particularly sensitive to ensure that every safeguard is observed" when a defendant's life is in jeopardy, Gregg, 428 U.S. at 187 (1976), the interests of justice require that belated arguments anent the constitutionality of an aggravator be evaluated against that evidence presented at trial.

On the other hand, defendants' challenges based on the insufficiency of the evidence would ordinarily have been unripe until the government rested following its penalty phase presentation. See United States v. Williams, 2004 WL 2980027, at *17 (S.D.N.Y. Dec. 22, 2004) ("A pre-trial motion ... is normally not the place to test the sufficiency of the government's evidence....")(collecting cases).   First, the government need not disclose its evidence on the notice of intent. See Battle, 173 F.3d at 1347; cf. Gray v. Netherland, 518 U.S. 152, 167-68 (1996)(determining that there is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing).  Second, while much of the prosecution's penalty phase information will be carried over from the guilt phase, not all of the aggravating factors are based on the circumstances of the capital crime, and therefore await development during the penalty phase.   In addition, as discussed above, the government may also introduce information, not admissible during the guilt phase, in support of the aggravating factors. 18 U.S.C. § 3593(c); Fell, 360 F.3d at 143.

Here, however, special circumstances enabled disposition of the insufficiency of the evidence claims. As gleaned from the government's response and the oral arguments, the government's penalty phase information was practically coextensive with the evidence presented during the guilt phase.   Indeed, most of the aggravators focused on defendants' conduct during the commission of the capital offense.   In addition, the government did not challenge the timing of the

insufficiency claims,[3] and did not suggest that it would be supplementing the trial evidence with new information during the penalty phase.

The parties do not dispute, and there is of course no question that courts have inherent authority to prescribe procedure "to preserve the integrity of the judiciary by ensuring that a conviction rests on appropriate considerations validly before the jury." United States v. Hasting, 461 U.S. 499, 505 (1983); cf. Fed.R.Crim.P. 57(b) (where no law or rule is directly applicable, "a judge may regulate practice").  It is essential that courts exercise that authority to ensure the integrity of capital sentencing proceedings.

Where, as here, special circumstances permit the court to determine the sufficiency of aggravating factors prior to the beginning of the sentencing phase, the Court holds that the determination should not be postponed.  The grave concerns present in capital proceedings demand that procedure and factfinding aspire to a heightened standard of reliability.  See Ford v. Wainwright, 477 U.S. 399, 411 (1986). Furthermore, the Constitution requires that juror discretion in a capital sentencing proceeding be sufficiently guided so as to prevent the arbitrary imposition of death sentences.  Gregg, 428 U.S. at 189.

These considerations compel the Court to at least exclude[4] from the jury's consideration at the earliest possible juncture those aggravating factors for which no support may be had.  "[T]he weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor." Jones, 527 U.S. at 398 (citing Stringer v. Black, 503 U.S. 222, 232 (1992)).  Asking the jury to consider an aggravator which no

---

[3] The Court observes, however, that defendants could well have raised many of their arguments earlier, given the two-week interval between the guilt and penalty phases.

[4] It is unclear whether the ultimate effect of such an exclusion should be a literal striking of the offending language from the Notice, or simply exclusion from the jury's consideration of the particular aggravator.  Because defendants did not request that the language be stricken from the Notice, the Court excluded the factors from the jury's consideration, or limited them accordingly.

Cr. No. 02-117 (PG)                                                    Page 12

reasonable juror could find risks error, prejudice to the defendant, and unjustifiably prolongs the process.  It follows that under these circumstances a court must exercise its power to safeguard defendants' rights and the integrity of the process.  The Court therefore concluded that it had the authority to exclude unsupported aggravators and that such a decision should not be deferred.

## E. Defendants' Challenges

With these considerations in mind, the Court now evaluates defendants' arguments for exclusion.  The arguments are addressed seriately by aggravator, in the order they appeared in defendants' motion.  Defendants' "miscellaneous" arguments are treated last.

## i. Pecuniary Gain

The government assigned the statutory aggravator of murder committed "as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value."  18 U.S.C. § 3592(c)(8). Defendants rightly assert that the "pecuniary gain" aggravator is only applicable to situations where pecuniary gain is expected to follow as a direct result of the offense which gives rise to the death penalty, here, the murder.  See United States v. Bernard, 299 F.3d 467, 483-84 (5th Cir. 2002), cert. denied, 539 U.S. 928 (2003) (finding evidence insufficient to support application of "pecuniary gain" aggravator where defendants committed murder not for pecuniary gain but to prevent victims from reporting robbery to police).

Relying heavily on Bernard,[5] defendants argue that because there is no evidence that the murder here was committed for pecuniary gain, as

---

[5] Defendants also cite United States v. Chanthadara, 230 F.3d 1237, 1264 (10th Cir. 2000), cert. denied, 534 U.S. 992 (2001).  The government correctly distinguishes the limited Chanthadara holding by maintaining that the errors present in that case can be easily cured by proper instructions to the jury.

Cr. No. 02-117 (PG)                                                    Page 13

opposed to the robbery, the aggravator should be excluded.   The
government distinguishes <u>Bernard</u> by pointing out that the victims in that
case were killed hours after the robbery, whereas the homicide in this
case was committed during the commission of the robbery.   Instead, the
government submits that this case is more similar to <u>United States v.</u>
<u>Barnette</u>, 390 F.3d 775, 781 (4th Cir. 2004), where the murder occurred
almost simultaneously with the underlying federal offense, there, a
carjacking.   In that case, the defendant targeted a car stopped at an
intersection.   He put his shotgun to the open driver's window, ordering
the driver out of the vehicle, and into the bushes.   He then took the
driver's wallet and shot and killed the driver, speeding away in his
vehicle.   <u>Id.</u>

        Here, Medina shot the victim before he had the money.   Catalan
inflicted his fatal wounds as Medina was fleeing with the money, when the
victim was on the pavement agonizing.   It may be that the pecuniary gain
was already had at the time of the murder, but because the murder was
practically simultaneous with the gain, and the murder clearly
facilitated that gain, it can be said that the murder is part of the same
transaction.   Under these facts, a finding of pecuniary gain would not
involve an extension of existing law.   A jury could properly infer that
the murder was committed for the express reason to effect the robbery,
rather than being incident to, or as an afterthought to the robbery.
<u>Barnette</u>, 390 F.3d at 781.   The evidence is thus sufficient to support
the aggravator, and the motion to exclude is DENIED.[6]


ii. <u>Substantial Planning or Premeditation</u>

        The government also alleged as a statutory aggravating factor that

_____

        [6] As defendants point out, the government discussed other motives for the
murder during its closing.   While it may well be that pecuniary gain was not the
sole motive, a reasonable jury could conclude that such gain was expected to flow
as a result of the murder.   In addition, the Court has found no caselaw requiring
that pecuniary gain be the sole motive for the murder.

the defendants committed armed robbery in violation of the Hobbs Act
after substantial planning and premeditation to cause the death of Mr.
Gilberto Rodriguez Cabrera. (Docket No. 149 at 3) The FDPA defines the
factor as follows: "The defendant committed the offense after
substantial planning and premeditation to cause the death of a person or
commit an act of terrorism." 18 U.S.C. § 3592(c)(9).

The "substantial planning and premeditation" aggravator expresses
a legislative determination that "this [type of] murder is different."
Sampson, 335 F.Supp.2d at 209. In order to cabin the aggravator within
constitutional limits, the case law consistently anchors the
"substantial planning and premeditation" to the murder and not merely to
the underlying federal offense. Id. at 210. The government must prove
both substantial planning and substantial premeditation. See United
States v. Tipton, 90 F.3d 861, 896 n.17 (4th Cir. 1996). Courts have
consistently construed "substantial" to mean a "large" or "considerable"
amount of planning. See United States v. McCullah, 76 F.3d 1087, 1110
(10th Cir. 1996); see also United States v. Matthews, 246 F.Supp.2d 137,
148 (N.D.N.Y. 2002)(collecting cases).

Defendants contend that the aggravator warrants exclusion because
the evidence is insufficient to establish beyond a reasonable doubt that
there was planning to commit murder, let alone "substantial planning."
While the government concedes that the aggravator relates to the murder
and not merely to the underlying offense of armed robbery (Docket No. 424
at 2), the government offered no argument as to the extent of the
requisite planning. The government's only evidence in support of
planning is that defendants brought their weapons, submitting that it
would be reasonable to infer that there was a pre-formed intention to
kill from the possession of the weapons.

The Court agrees that it is reasonable to infer a pre-formed
intention to kill from the evidence. However, for the "substantial
planning" aggravator to apply there must be a considerable amount of

planning directed at accomplishing the murder of the victim, not just planning to commit armed robbery. See Sampson, 335 F.Supp.2d at 210. There must be a showing of substantial or elaborate planning before the defendant sets out for the crime scene. Id. at 212. Here, there was simply no evidence presented at trial that the defendants engaged in any planning to kill Mr. Rodriguez-Cabrera and the government made no proffer of other information.

Although much evidence was adduced regarding the modus operandi of other robberies and the design of this one, which included a carjacking and the subsequent burning of the getaway vehicle, none of that evidence was pertinent to defendants' plans to commit murder. Contrary to the government's assertion, the possession of a weapon is not alone enough to infer a substantial plan to commit the murder of a specific person. Id. at 211-12.

This Court therefore holds that no reasonable juror could find "substantial planning" where the evidence shows no planning to commit murder prior to defendants' arrival at the scene, and at most one minute of planning during the commission of the crime. The Court expresses no view as to whether the one minute establishes a sufficient evidentiary predicate for "substantial premeditation" inasmuch as there is a dearth of evidence regarding "substantial planning" and the jury must find both. See Tipton, 90 F.3d at 896 n.17. Defendants' motion to exclude the substantial planning aggravator is therefore GRANTED.

iii. Vulnerability of the Victim

Another aggravating factor propounded by the government was the vulnerability of the victim. 18 U.S.C. § 3592(c)(11). As contemplated by the FDPA, this factor applies where "[t]he [homicide] victim was particularly vulnerable due to old age, youth, or infirmity." While the government need not show that defendants knew of the vulnerability, Sampson, 335 F.Supp.2d at 214, it must prove that there was a connection

or a nexus between the victim's alleged vulnerability and his death. <u>See United States v. Johnson</u>, 136 F. Supp. 2d 553, 560 (W.D.Va. 2001) (striking aggravator where pregnant woman was killed by an explosive because no nexus existed between victim's vulnerability and her death).

In essence, the FDPA provides that a defendant is especially blameworthy if he murders someone who is particularly vulnerable to being killed because he has an infirmity which made him less able to escape or resist attack than most people. <u>Sampson</u>, 335 F.Supp.2d at 213; <u>see also United States v. Minerd</u>, 176 F Supp. 2d 424, 447 (W.D. Pa. 2001) (finding aggravator valid where one victim was a three-year-old child and another was a woman eight months pregnant as neither would be equipped to quickly escape); <u>United States v. Paul</u>, 217 F.3d 989, 1001-02 (8th Cir. 2000) (allowing vulnerable victim aggravator where the victim was 82 years old because victim was less physically able to resist).

Here, the government submits that the factor is applicable to Medina because the victim was already vulnerable as a result of the wound to his forearm when Medina fired the fatal shot to the victim's chest. The government also argued during the hearing that the victim was vulnerable because he was in a position of full surrender. With regard to Catalan, the government contends that at the time he fired, about 30 seconds *after* Medina had fatally wounded the victim, the victim lay helplessly on the pavement, unable to withstand Catalan's continued shelling. Defendants retort that the factor is inapplicable because the physical infirmity cannot arise during the commission of the crime. Although defendants did not articulate the argument as follows, it appears that it is grounded in the idea that the required nexus between the victim's alleged vulnerability and his death collapses if the vulnerability arises during the commission of the crime.

The Court notes that neither party cited any authority in support of their contentions. Nevertheless, the defense argument is flawed. The vulnerable-victim aggravator focuses on the characteristics of the

victim at the time he was harmed, and the nexus between those
characteristics and the cause of death. See Johnson, 136 F. Supp. 2d at
560.  It is clear that there is no nexus between a victim's alleged
vulnerability and the cause of his death if these are one and the same.
However, the requisite nexus may be present where the vulnerability
arises prior to the cause of death and contributes to the victim's death,
even if the onset of the vulnerability occurred during the commission of
the crime.

Applying that framework here, the evidence is insufficient to
support the aggravator as against Medina.  The victim was not vulnerable
within the meaning of the aggravator when Medina fatally wounded him
because the prior wound to the forearm did not leave him so vulnerable
that he could not defend himself.  The victim was still armed and
otherwise capable of mounting a defense.  The government's argument that
the victim was vulnerable because he was in a position of surrender fails
because a position of surrender is not a physical infirmity.
Alternatively, the requisite nexus is lacking between the infirmity and
the cause of death.  The motion to exclude the aggravator is therefore
GRANTED as to Medina.

However, the evidence clearly supports application of that
aggravator to Catalan.  There was a critical juncture where the victim
fell to the ground after Medina wounded him, while a shoot-out raged
about him.  After the shootout ended, Catalan proceeded to fire all of
his remaining bullets at the victim who lay wounded on the pavement.
When Catalan targeted him, the wounds already suffered constituted an
infirmity that made the victim particularly vulnerable.  The victim was
less able to defend himself or flee.  Sampson, 335 F.Supp.2d at 213.  He
could barely roll his shoulders away from the bullets.  It was on this
evidence permissible for a jury to find, beyond a reasonable doubt, that
the victim's vulnerability was connected to his death.  The motion to
exclude the aggravator as to Catalan was accordingly DENIED.

iv. Heinous, Cruel or Depraved Manner of Committing the Offense

The government also specified in its Notice of Intent the statutory
aggravator of "heinous, cruel or depraved," citing 18 U.S.C. §
3592(c)(6).  The Supreme Court has held that this aggravator would be
vague if it were not for its qualifying language: "the defendant
committed the offense in an "especially heinous, cruel or depraved manner
in that it involved torture or serious physical abuse to the victim."
Jones, 527 U.S. at 377 (construing 18 U.S.C. § 3592(c)(6)).

The literal language of the FDPA expressly provides that it is
sufficient to prove that a crime was especially heinous, especially
depraved, or especially cruel, in that it involved torture or serious
physical abuse.  18 U.S.C. § 3592(c)(6).  An offense can be found to be
especially heinous, cruel, or depraved in that it involved torture only
if it is found that the defendant inflicted the mental or emotional abuse
to the victim for the purpose of sadistic pleasure, for the purpose of
punishment, or for the purpose of extracting information or a confession.
Sampson, 335 F.Supp.2d at 206-207.

Alternatively, an offense may be found to be especially heinous,
cruel, or depraved in that it involved serious physical abuse, although
the government need not prove an amount of abuse that "significantly
exceeds" that necessary to cause death.  United States v. Chanthadara,
230 F.3d 1237, 1262 (10th Cir. 2000); see also United States v. Hall, 152
F.3d 381, 415 (5th Cir. 1998), cert. denied, 526 U.S. 1117 (1999).

Defendants do not dispute that there was serious physical abuse.
Defendants instead object on the ground that the special finding in the
indictment does not track the statute because it charges both "torture
and physical abuse," instead of charging "or" in the disjunctive, and
because the indictment fails to charge "serious physical abuse."
Defendants submitted that because the government failed to charge
"serious" physical abuse, the government should only be permitted to
proceed on the torture prong, which should result in exclusion of the

factor on account of the insufficiency of the evidence.

The argument is meritless.  First, defects in the indictment must be raised prior to trial.  Fed.R.Crim.P. 12(b)(2).  Defendants' argument is untimely inasmuch as they did not see fit to quibble until after they were convicted.  Second, the failure to include the statutory aggravators in the Indictment is harmless error where defendants are timely served a Notice of Intent.  <u>United States v. Robinson</u>, 367 F.3d 278, 289 (5th Cir. 2004).  Here, not only were the factors included in the Indictment, defendants were served with the Notice of Intent, which does assign "serious physical abuse," albeit in the conjunctive with torture. (Docket No. 149 at 3)  In addition, appropriate jury instructions would be sufficient to cure any vagueness in the aggravator as alleged.  <u>See Maynard v. Cartwright</u>, 486 U.S. 356, 365 (1988) (holding that a jury instruction directing the jury to find that the murder must involve "some kind of torture or serious physical abuse" would be sufficient to cure any vagueness problem).  The motion to exclude the aggravator on that ground is therefore DENIED.

Defendants' alternative argument regarding the impermissible duplicity of the "heinous, cruel or depraved" aggravator with the "vulnerable victim" aggravator, is moot.  Although other courts have held that duplicitous non-statutory aggravators must be excluded, <u>see e.g. U.S. v. Bin Laden</u>, 126 F.Supp.2d 290, 299 (S.D.N.Y. 2001), the Supreme Court has cautioned that it does not support that theory of review as to statutory aggravators.  <u>See Jones</u>, 527 U.S. 373, 398 (1999) (rejecting theory that a similarity between two statutory factors could make their combined use invalid).  The motion to exclude the aggravator on that ground is accordingly DENIED.[7]

---

[7] Even if there were such a constitutional limitation on statutory aggravators, there is no duplicity concern here.  The "heinous, cruel or depraved" aggravator concentrates on what the victim suffered; whereas, the "vulnerable victim" aggravator focuses on who the victim was, his characteristics.  The Court also notes that the aggravators serve different purposes because the "heinous, cruel or depraved" aggravator captures the nature and brutality of the defendant's

v. Defendants' Lack of Remorse

     The Notice of Intent further ascribed the non-statutory aggravator of lack of remorse.  Defendants argued for its exclusion claiming that the evidence is insufficient and that any slight probative value is outweighed by the danger of unfair prejudice under 18 U.S.C. § 3593(c). The Court begins by observing that there is no constitutional ban on the use of lack of remorse as an aggravating factor.  See Zant v. Stephens, 462 U.S. 862, 885 n.22 (1983)("[a]ny lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation.") (citation omitted).  Accordingly, the Court declines to find, as defendants' request, that the assignment of this non-statutory aggravator is per se improper under FDPA § 3593(c).

     Of course, the information adduced in support of the aggravator is subject to scrutiny to ensure that it is relevant, reliable, and that its probative value outweighs any danger of unfair prejudice, confusion, or misleading the jury.  FDPA § 3593(c).  There must be a showing of continuing glee, boastfulness, or other affirmative conduct which indicates a pervading and continuing lack of remorse following the criminal conduct.  See United States v. Davis, 912 F.Supp. 938, 946 (E.D.La. 1996).  In addition, the government may not urge the applicability of the aggravator on information that has a substantial possibility of encroaching on the defendants' constitutional right to remain silent.  See United States v. Cooper, 91 F.Supp.2d 90, 112-113 (D.D.C. 2000) (finding that defendant's alleged "unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted" is improper argument).

conduct, while the vulnerable-victim aggravator "focuses heavily on the characteristics of the crime's victim."  Given that the two aggravators serve different purposes, it therefore follows that Congress envisioned that both could be applied based on the same conduct.  See generally United States v. Checora, 175 F.3d 782, 794 (10th Cir. 1999)(spurning defendants' argument that trial court engaged in "double counting" under the Sentencing Guidelines when it applied both the "vulnerable victim" and "extreme conduct" enhancements).

Here, defendants' argument that there is no evidence of lack of remorse falls flat under the weight of the evidence.  The jury heard testimony regarding Medina's post-murder shopping spree.  The jury was also privy to Medina's newly acquired alias of "Ranger," which became his sobriquet in prison.  In addition, evidence was offered regarding Medina's triumphant demonstration of his sharpshooting technique in prison, after the screening of a gangster movie.  This is precisely the sort of continuing boastfulness which indicates lack of remorse.  See Davis, 912 F.Supp. at 946.  It would thus be permissible for a jury to find that the requisite level of proof was present as to Medina.

The Court agrees, however, that there was little or no evidence on "lack of remorse" relevant to Catalan.  The government cites only the manner in which he slammed his weapon on the pavement in disgust following his attack on the victim.  (Docket No. 424 at 5)  This information is too speculative, and too intertwined with his conduct during the crime such that it cannot indicate continued remorselessness. The application of the aggravator was therefore limited to Medina.

F. Defendants' Miscellaneous Arugments

In addition, defendants submitted two "miscellaneous" arguments. They claimed that the aggravators of "heinous, cruel and depraved" and "substantial planning and premeditation" should be struck because the petit jury's decision would be informed by evidence that was not before the grand jury.  They further argue that it is likely that the grand jury was not properly instructed on the standard for pecuniary gain, and that the factor should therefore be stricken.  (Docket No. 417 at 11)

The Court first addresses the argument regarding the evidence before the grand jury.  It is a variation on defendants' insistence that the government's star witness, Mr. Eluber Torres Alejandro, changed his testimony because he never mentioned prior to trial that defendants murdered the victim while he plead for his life with his hands raised

high above his head.  Be that as it may,[8] it is irrelevant to the
validity of the indictment.  An indictment valid on its face is not
subject to challenge on the ground that the grand jury acted on the basis
of inadequate or incompetent evidence.  Costello v. United States, 350
U.S. 359, 361-62 (1956); Holt v. United States, 218 U.S. 245 (1910).  The
Court sees no merit to defendant's argument and denies the motion to
strike aggravators on that basis.

Defendants' argument that the grand jury must have received
improper instructions on the applicability of the pecuniary gain
aggravator also suffers from a fundamental flaw.  Grand jury proceedings
are entitled to a presumption of regularity.  See e.g. United States v.
Johnson, 319 U.S. 503, 512-13 (1943).  Aside from the fact that
defendants' claim is premised on unsupported speculation, its success
depends on the legitimacy of their interpretation of the prevailing law
on pecuniary gain.  The case law makes clear that the pecuniary gain
aggravator is applicable where the gain is expected to flow as a result
of the murder.  See United States v. Barnette, 390 F.3d 775, 781 (4th
Cir. 2004).  The Court already determined that there is sufficient
evidence for the jury to conclude that there was such an expectation of
gain, and declines to consider the argument any further.

---

[8] Defendants' characterization of the witness' testimony as contradictory is
unfair, because the trial testimony is not so much a contradiction as it is an
extension of his previous statements.  It should come as no surprise that the
witness furnished details during his trial testimony that were not included in his
original statements to investigating authorities.  Defendants have proffered no
evidence showing that the omissions in previous statements resulted from anything
other than the failure of investigators to ask the same detailed questions as the
prosecutor.  At the time of the witness' interviews, the authorities were most
likely focused on suspect identification rather than ascertaining relative
culpability between the defendants.  Furthermore, there is no evidence showing that
the witness adopted the contents of the summaries as his own.  See Sosa v. Dretke,
2004 WL 1124949, at *14 n.112 (W.D.Tex. 2004)(unpublished decision).

### III. Conclusion

The circumstances of this case were congenial to an early determination regarding the sufficiency of the evidence supporting the aggravating factors.  The Court therefore GRANTED IN PART AND DENIED IN PART defendants' motion to exclude the various aggravators, granting the exclusion of the "substantial planning and premeditation" aggravator, limiting the vulnerable victim aggravator to Catalan, and limiting the lack of remorse aggravator to Medina, but otherwise denying the motion. Although the Court considered the merits of the other arguments because of the constitutional requirements of heightened reliability in capital cases, they were technically waived or moot.

**SO ORDERED.**


In San Juan, Puerto Rico, May 19, 2005.




S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE